# IN THE UNITED STATES COURT OF APPEALS
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Christopher Gary Baylor, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) **No. 23-13250** |
| THE FLORIDA KU KLUX CLAN | ) |
| FOR THE TRADITIONALIST | ) |
| AMERICANS, ET AL., | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

## APPELLANT'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF

Pursuant to Federal Rules of Appellate Procedure 8, Appellant, Christopher Gary Baylor, respectfully moves this Court for Emergency Injunctive Relief pending appeal of the district court's denial of Appellant's unopposed Motion for Emergency Injunctive Relief in **Exhibit A**. Appellant requests that this Court grant emergency injunctive relief enjoining Appellee, CURTIS JACOBUS, from further participating or presiding over Appellant's State court case(s): 05-2020-CA-0511911, 05-2021-CA-056712 and 05-2022-CA-020287, on or before October 23, 2023.

In conjunction with this request, and in light of the critical issues involved, Appellant also requests that this Court expedite consideration of this appeal. If this Court were to deny Appellant's request for Emergency Injunctive Relief, Appellant respectfully requests, in the alternative, that this Court nevertheless expedite

consideration of this request and appeal in accordance with 28 U.S. Code § 1657(a).

## I. <u>APPELLANT'S PRELIMINARY STATEMENT, CLAIMS AND PROCEDURAL HISTORY</u>

This case involves disproportionately and predominantly ongoing unlawful bias and racial discrimination against homeless Native African-American military veteran and Civil Rights advocate, Christopher Gary Baylor, which is *ultra vires* in violation of the Fourteenth Amendment's Due Process and Equal Protection Clause, Ninth and First Amendment under the United States Constitution.

For more than two years, the Appellees have refused and denied Appellant of: basic Notice in his State court appellate proceedings such as entry or copy of final opinions mandated by Florida State statutes, Rules and administrative procedures; any docket activity, acceptance, acknowledgement or dismissal of appellate case(s); vacatur or disqualification required by law; any meaningful opportunity to be heard on newly raised *sua sponte* defenses made in a final decision despite any request for rehearing or reconsideration; challenges or consideration of dispositive Orders made under the sole authority of mere court clerks, and; any constitutional challenge to a Statute which disparately impacts indigent individuals, Blacks/African Americans and/or, the Floridian public as a whole in public interest litigations.

As a preliminary matter, both Florida's State and federal court officials have implicitly determined that Black/African Americans have no Constitutional rights, which is biased conduct shown on the face of the record and shown traversed across a myriad of Appellant's civil cases which seek to vindicate fundamentally important fair housing, familial, religious, marital and employment rights; rights that are

undoubtedly accorded to White Americans only, yet not once over the entirety of five (5) years, since 2018, within an iota of lawful or equitable relief, remedy or redress, similarly applied when matters involving the fundamentally important rights of a Black/African American protected class minority were or remain at issue.

While the Chief Justice for the Florida Supreme Court, at the State level, retrospectively addressed through the issuance of *sua sponte* Orders, the impact and weight of Appellant's claims by transferring or temporary reassigning Appellant's cases to other courts to stop that discrimination, matters raised in Appellant's Complaint still remain at issue, and no official declaratory or prospective, equitable remedy can be had in the State courts because the State forums are so biased[1].

Because the Appellees have concluded that Appellant has no constitutional right to any relief, remedy or redress primarily reserved for Whites Americans only, Appellant now files this appeal due to the shockingly pervasive and extrajudicial bias condoned by White judges, which is also now seen in the federal forum.

Clearly shown, on September 20, 2023, Appellant filed an unopposed Motion for Emergency Injunctive Relief with supporting affidavit, ECF.No.:47, in case 6:23-cv-748-CEM, in the Middle District Court of Florida for Orlando, Florida, requesting relief against Appellee CURTIS JACOBUS, on or before September 21, 2023, the same relief the court granted to a White party in Cuthbertson v. Comm'r of Soc. Sec., 6:15-cv-2062 (M.D. Fla. Mar. 29, 2017) ECF Doc 26. However, much like in the

---

[1] Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973)(where a state tribunal has been found incompetent by reason of bias, the Supreme Court has held that there was effectively no opportunity to litigate constitutional claims.)

Appellant's companion case, 6:22-cv-01356-CEM, which was commenced August 1, 2022, has gone ignored. More than one (1) year has elapsed, yet Appellant's District Court case has not moved an inch forward despite seeking similar relief in the form of a Motion for Injunctive Relief, ECF.No.:19, filed on January 1, 2023, or Motion for Hearing and Clarification ECF.No.:22, filed on March 13, 2023, asking the court to respectfully pronounce its intentions.

Nonetheless, much like the case at bar, remains pending and has received no attention by the same Judge in the same court since the *sua sponte* issuance of its Show Cause Order ECF.No.:9, issued on September 9, 2022, more than one year ago.

In a remedial effort to cure this ongoing bias and discrimination, Appellant filed a Petition to Disqualify District Court Judge: Hon. Carlos Eduardo Mendoza, with supporting affidavit in the instant case 6:23-cv-748-CEM, on September 26, 2023, ECF.No.:48, **Exhibit B**. However, the Judge Mendoza has refused to respond. Based on ongoing, recent and historical treatment of Appellant's cases, the District Court will undoubtedly refuse to respond to any other papers requesting relief filed by the Appellant due to invidious discrimination against non-Hispanic Blacks, *pro se* litigants and/or Civil Rights advocates who exercise free speech against White Negrophobia. Thus, Appellant seeks in addition to Emergency Injunctive Relief here, consideration of the biased and discriminatory behavior undoubtedly shown on the face of the record.

As explained, district court unduly delayed and effectively denied Appellant

the same relief seen liberally granted to a White litigant, as shown in Exhibit B at Pg.6, ¶1. Absent immediate injunctive relief, Appellant once more risks imminently losing the opportunity to obtain any adequate or meaningful relief in both the State and federal courts.

Therefore Appellant respectfully moves this Court to enjoin Appellee CURTIS JACOBUS from further participating or presiding over Appellant's State court case(s): 05-2020-CA-0511911, 05-2021-CA-056712 and 05-2022-CA-020287, during the pendency of this appeal or, in the alternative, to decide this appeal on an expedited basis.

## II. <u>REASON FOR EMERGENCY RELIEF</u>

Appellant commenced district court case 6:23-cv-748 on April 4, 2023 by filing a Complaint in the Middle District Court of Florida and personally serving a copy with summons on Appellees. During the same time, Appellee, CURTIS JACOBUS presided over Appellant's State court case, 05-2020-CA-0511911, which remained inactive on the docket since July 25, 2022, more than one year ago.

More than one year later, on September 9, 2023, Appellee JACOBUS issued an "*ORDER SETTING HEARING FOR FAILURE TO COMPLY*" to an earlier Order made on July 25, 2021, more than two years ago, mandating that Appellant appear in person to explain why no Case Management Plan was made in response to an Order that was never issued to Appellant.

In addition, the September 9 Order clearly states, absent dismissal, that:

"IF NOT CURED WITHIN TEN (10) DAYS OF THE DATE OF THIS

ORDER, CASE REMAINS ON THE OTSC DOCKET."

In response to the September 9 Order, on August 21, 2023, Appellant filed a Motion requesting a stay of proceedings. Absent any consideration of Appellant's Motion requesting a stay, Appellee JACOBUS dismissed the Appellant's case on September 22, 2023, before any decision was made upon Appellant's request for Emergency Injunctive Relief in the District Court on September 20, 2023.

Much like in Appellant's other district court case 6:22-cv-01356 that has gone unheard for more than one year, the district court in the instant case 6:23-cv-748, has customarily and intentionally declined to hear or decide any issue in order to cause Appellant's case(s) or claims to become moot. Here lies a pattern of bias.

Based on the forgoing biased behavior, any relief including declaratory relief, is unavailable in both the State and federal forums. Also, based on the reason that the Appellees preside over Appellant's State court cases and has declined to issue any equitable or lawful relief, remedy or redress for more than five years, Appellant has no other secure, plain, just, speedy, inexpensive, efficient, adequate, meaningful or fair remedy-at-law.

While Appellee may appeal the dismissal of his State court case on or before October 23, 2023, does not equate to any meaningful remedy at law, especially when the Appellees, since December 2021, have intentionally refused to give Notice in any of Appellant's appellate cases, and have on every occasion, dismissed Appellant's appeals or writs for relief under the State's woeful and routinely misapplied general practice of issuing "unelaborated denials" without reason or opinion in an effort to

efficiently and quickly dispose of Black Appellant's *pro se* appellate cases.

Additionally, the State's highest Court have refused to issue any such relief, or remedy the denial of the mere issuance of a final opinion rendered in Appellant's housing appeal, which was delayed for more than one (1) year, and that directly and approximately causes Appellant's current state of ongoing homelessness.

Consistent across every case is the lack of Black Appellant's foundational, yet alleged right to free speech and Due Process undoubtedly proven and seen afforded to White litigants only. Both the State and federal Constitution provides that Due Process and freedom of speech are among the great bulwarks of liberty, and that accordingly, neither the State nor federal government shall abridge these freedoms, or delay or deny the right to petition government for the redress of grievances. Both rights are implicated here. When Blacks exercise these rights in Florida, they bring with them a basic expectation that they should be able to speak and be heard at a meaningful time without fear of retaliation or legal sanction. This case is about vindicating these alleged constitutional promises.

Without any issuance of relief, Appellant is subject to lose and thus proven that these rights do not apply to Blacks in the State of Florida.

### III.  **ARGUMENT**

Injunctive relief is necessary to protect the Appellant's rights to speak and advocate for Civil, as well as equal rights, but without being subjected to the risk of chilling or legal reprobation. Appellant meets the requirements for a temporary injunction because he is (1) likely to succeed on the merits, (2) likely to suffer

irreparable harm in the absence of preliminary relief, (3) a balance of the equities tips in his favor, and (4) an injunction is in the public's interest.

**A.** <u>Appellant is Likely to Succeed on the Merits</u>

There is no question that the exercise of a robust advocacy of constitutional or Civil Rights claims to protest what Appellant knows to be an unjust dismissal or stay of his case(s) in order to render them moot under a technical or procedural implicit gag, or denial without hearing, implicates the core of what Article I, Section 4 of the Florida constitution and First Amendment to the Constitution of the United States was intended to protect, notwithstanding Due Process.

Appellees' use of summary, unelaborated, or implicit stays or denials without any adequate, fair or meaningful opportunity to be heard is plainly improper, even upon taking Appellant's self represented explanations as given. Relevant to the case here, the Court said in <u>NAACP v. Alabama</u>, 357 U.S. 449, 460 (1958), "[n]ovelty in procedural requirements cannot be permitted to thwart review. . . applied for by those who, in justified reliance upon prior decisions, seek vindication. . . . of their federal constitutional rights."

*First*, several times have Appellee JACOBUS invoked its own newly created *sua sponte* rules-of-law to block Appellant's right to speak on fair housing claims, including similar fundamentally protected issues including employment, religious, familial and marital rights in other cases that stem from constitutional protections. Here, JACOBUS's self made Order of dismissal in the subject case, with respect to dismissal for failure to file a case management plan, does not even gesture at any

findings that Appellant's act of disobeying an Order was flagrant, persistent, willful or otherwise aggravated, nor could these lack of findings amount to any serious and immediate breach of any other court Order, both of which must be present to trigger dismissal.

Because there are no Florida Supreme Court cases directly setting forth the standard for dismissal for mere failure to file a case management plan, on par with analyzing JACOBUS' Order of dismissal, courts have said, "while the trial court has discretion to sanction a party for failure to attend a case management conference . . . . the sanction must be commensurate with the offense. *See* <u>Clark v. Sturks</u>, 668 So.2d 1106, 1107 (Fla. 2d DCA 1996).

Other courts have "reverse[d] the order of the trial court dismissing [a] case for failure of [a] *pro se* appellant to attend a case management conference." <u>Lenfestey v. U.S. Balloon Corp</u>., 699 So. 2d 850 (Fla. 4th DCA 1997). Much like here, JACOBUS' order of dismissal failed to contain an express finding of deliberate and contumacious disregard of the court's authority. *Id.* citing <u>Commonwealth Fed. Sav. and Loan Ass'n. v. Tubero</u>, 569 So.2d 1271 (Fla. 1990); *See* also <u>U.S. Bank Nat'l Ass'n v. Martinez</u>, 188 So. 3d 107 (Fla. 5th DCA 2016).

Even if Appellant were to present these same laws of the case doctrine in defense or support of any claims made on appeal, much like during the past five (5) years, Appellees, in conjunction with JACOBUS, would deny Black Appellant of the same right to relief liberally seen afforded to White litigants only. Thus it cannot be fairly said that Appellant has any adequate remedy-at-law when poised to face the

same biased Appellees that have discriminatorily denied every iota of relief for more than five (5) years.

As the Supreme Court also has explained, "redetermination of the issues may nevertheless be warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." <u>Haring v. Prosise</u>, 462 U.S. 306, 317-18, 103 S. Ct. 2368, 2375-76, 76 L.Ed.2d 595 (1983).

*Second*, constitutional First Amendment rights, as well as Due Process, has eluded Appellant in every instance. In the federal context, the Fifth Amendment provides that "no person" shall be deprived of "life, liberty, or property, without due process of law." Generally, the principle of "due process" allegedly guarantees and protects individual rights by limiting exercise of government power. The Supreme Court has held that the Fifth Amendment, which applies to federal government action, provides persons — albeit, other than Blacks — with both procedural and substantive Due Process guarantees.

Nonetheless, if the federal government, including the Middle District Court of Florida, seeks to deprive Appellant of a protected life, liberty, or property interest, the Fifth Amendment's Due Process Clause *should* require that court first provide certain procedural protections. None have been provided thus far.

Allegedly, procedural Due Process often requires the government to provide all persons with notice and opportunity for a hearing before such a deprivation. In addition, the Supreme Court has interpreted the Fifth Amendment's Due Process Clause to include substantive Due Process guarantees that protect certain basic or

fundamental constitutional rights from federal government interference, regardless of the procedures that the government follows when enforcing the law.

But as shown here, which is not an isolated incident of Appellant's over-expansive interpretation of racial bias and discrimination against Black litigants in the State courts; stems from Appellant's August 1, 2021 federal companion court case and onwards, where the Florida Middle District Court has invoked its own unlawful and selective discrimination against Appellant at every consecutive day up to the time of this writing. Obviously, Appellant has no adequate remedy-at-law anywhere in any State court proceedings, and none can be found anywhere in the Middle District Court of Florida.

The District Court's implicit employment of a stay of Appellant's instant case, and denial of relief to the same effect in his companion case, is also improper. This scattershot application of implicit stays or denials of relief in order to render Appellant's claims or cases moot, imputes the intent to commit acts of unlawful discrimination to every Black person protesting a violation of Civil Rights in the vicinity of the State of Florida against Whites — which contravenes both the letter and spirit of federal law, which allegedly applies to all American citizens.

"Justice delayed is justice denied" is a legal maxim which means that if legal redress or equitable relief to an injured party is available, but is not forthcoming in a timely fashion, it is effectively the same as having no remedy at all. This principle is the basis for the right to expedite the legal system, because of the unfairness for the injured party who sustained injury having little hope for timely and effective

remedy and resolution. This phrase has become a rallying cry against courts, tribunals, judges, arbitrators or governments acting too slowly in resolving legal issues — either because the case is too complex, or because the issue or party raising issues lacks political favour, notwithstanding the inclusion of discriminatory effects.

According to The Florida Court Education Counsel "In some instances, legal error may amount to judicial misconduct" *citing* ALFINI, LUBET, SHAMAN & GEYH, JUDICIAL CONDUCT AND ETHICS 2.4 (LexisNexis/Matthew Bender 4th ed. 2007, 2010 supp.)(If a judge makes a legal error so extreme that it suggests a lack of minimal competence, this probably is an ethical problem.) *accord* <u>Castlewood Int'l Corp. v. Wynne</u>, 305 So. 2d 773, 774 (Fla. 1974)("The maxim that 'justice delayed is justice denied' is fully recognized by our Court and we have consistently attempted to minimize it by placing our cases in the 'jet stream'. [sic]"); Fla. Const. art. 1, § 21 ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.")

However, to the extent that this Court would deny relief, precisely shows on either of these fronts, that even a reviewing Court plainly finds that any Blacks in bringing forth claims against Whites, remains problematic and without remedy.

Appellant's fear of participating in future cases due to risk of non-adversarial confrontation sustained by arguments made solely by Appellees; Appellant's feeling of limitation and inability to seek any equitable or lawful relief, remedy or redress due to ongoing retaliation; Appellant's fear of court tactics designed to only escalate

dismissal or mootness in the absence of any fair or meaningful opportunity to speak or be heard on fundamentally important Constitutional or Civil Rights claims — thus establishes the intuitively uncontroversial fact that free speech against racial discrimination and/or bias by Whites, may be tactfully implemented against Black *pro se* Civil Rights advocates without political ties, to deter participation in such speech.

Appellant has standing for this type of injury, and a cause of action to enforce these alleged Constitutional guarantees, protections or rights under the law.

**B.** Appellant Will Suffer Irreparable Harm Absent Injunctive Relief.

Appellant has adequately established irreparable harm and the lack of an adequate remedy-at-law, because the State, as well as federal court, is proven to be a biased forum. "Irreparable injury may be demonstrated upon a showing of "bad faith" or "harassment" . . . or of other extraordinary circumstances resulting in irreparable injury, even without bad faith or harassment." Davis v. Gregory, No. 20-12716 (11th Cir. Jul. 14, 2021). "Extraordinary circumstances encompasses, but is not limited to, situations. . . where the decisionmaker was too biased to adjudicate the issues before it." *Id.*

Under this context, the stymie of Appellant's lawful and protected speech activity, directly contravenes the allegedly delicate and vulnerable principle of the right to speak. Loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Elrod v. Burns, 96 S Ct 2673; 427 US 347, (1976). Nevertheless, the potential chilling effect on the guarantees of

free speech and the right to sue. . . constitutes a clear threat of irreparable harm. *See* <u>Lynn</u>, 488 U.S. at 353-55, 109 S. Ct. 639.

Circuits make it clear that public officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. <u>Sanders v. St. Louis County</u>, 724 F.2d 665 (8th Cir. 1983); *See* also <u>Kilpatrick v. King</u>, 499 F.3d 759, 767 (8th Cir. 2007)("A citizen's right to exercise the constitutional freedoms to speak and to seek judicial relief without facing retaliation from government officials is clearly established."); <u>Garland v. Polley</u>, 594 F.2d 1220 (8th Cir. 1979); <u>Hall v. Sutton</u>, 755 F.2d 786, 787 (11th Cir. 1985); <u>Matzker v. Herr</u>, 748 F.2d 1142, 1150-51 (7th Cir. 1984); <u>Lamar v. Steele</u>, 693 F.2d 559, 562 (5th Cir. 1982), cert. denied, 464 U.S. 821, 104 S. Ct. 86, 78 L.Ed.2d 95 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 374 (3d Cir. 1981); <u>Silver v. Cormier</u>, 529 F.2d 161, 163 (10th Cir. 1976). Judges are "state officials" in both federal and state case law. *See* <u>Screws v. United States</u>, 325 U.S. 91, 97, 65 S. Ct. 1031, 1033, 89 L. Ed. 1495 (1945); <u>Pulliam v. Allen</u>, 466 U.S. 522, 539, 104 S. Ct. 1970, 1979, 80 L. Ed. 2d 565 (1984)("*injunction to protect Negroes. . from harassing actions by state officials, including a judge.*")

Here, any suggestion that Appellant has not yet been subjected to repeated constitutional violations, enhances the southern States' White power structure's anti-Black leanings and advocacy against Negrophobia, and ignores the well-worn rules protecting White Americans only, thus forcing a Black person to continue to

endure significant personal injury, which is irreparable harm itself.

Thus, even assuming the worst-case scenario of these repeated acts against one individual — by evidence, clearly shows that this has been the case since 2018 — where Appellees, including the District Court's ongoing practice of prohibiting Appellant's case(s) to move forward, cannot be right.

This harm manifests not only in the continued threat of racial discrimination and ethnic bias, but also Appellee and District Court's pretextual use of unlawfully implicit rule making to negatively affect every outcome, in disfavor of Appellant.

**C.** The Balance of Equities and Public Interest Weigh in Favor of Injunctive Relief.

In deciding whether to grant a temporary injunction, this Court must also "balance the competing claims of injury and must consider the effect on each part of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, 555 U.S. 7 (2008). Where government is a party to the suit, this weighing analysis includes whether an injunction would be in the public interest. *See* Nken v. Holder, 556 U.S. 418, 435 (2009). Where, as here, "the Government is the opposing party," the last two factors "merge" since "the government's interest is the public interest" *Id*. Swain v. Junior, 958 F.3d 1081, 1091 (11th Cir. 2020).

The harm to Appellant without the requested relief flows from the violation and/or deprivation of his housing and other rights under both the State and United States Constitution. Without this Court's intervention, Blacks, including Appellant, looking to speak out on Civil Rights claims face a constitutionally indefensible Hobson's choice: stay silent or risk further injury by asserting the right to be heard

or advocate publicly.

As stated above, several times has the Appellee, JACOBUS, *sua sponte* made, implemented or incorporated its own rules-of-law in order to discriminatorily and unlawfully dispose of three of Appellant's cases. Now, JACOBUS' dismissal of the Appellant's fair housing case circles the gambit of constitutional deprivations that State courts have reversed under similar circumstances on a number of different occasions. The inclusion of the fact that Appellant neither received Notice of any previous Order mandating compliance with submission of a case management plan, nor did Appellant display a flagrant, persistent or willful disregard for any Order, warrants immediate injunctive relief to prevent further irreparable injury or harm to Appellant when the rule-of-law is dissimilarly applied to Blacks.

In the likelihood Appellant is forced to appeal the decision of the circuit court before yet another biased forum, in the unlikely event that Appellees would serve justice by reversing the lower court's decision based on its own case precedent, the Appellant would be unfairly forced to argue the same claims before a clearly biased decision-maker. However, before any such decision is made, Appellant prays that the Appellees would be enjoined from further participating in his State appellate proceedings.

By contrast, the relief Appellant seeks does little to no harm or substantial prejudice to Appellee(s). There is no cognizable injury in compelling State officials to adhere to their State laws or constitutional mandates, nor would the public be jeopardized by such an injunction.

Appellant's "likelihood" of success on the merits is a strong indicator that an injunction would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful. . . action." <u>League of Women Voters of United States v. Newby</u>, 838 F.3d 1, 12 (D.C. Cir. 2016). Here, Appellant is likely to succeed in showing that Appellee JACOBUS is in violation of both Due Process and First Amendment rights, and the public interest therefore favors the Appellant.

## D. <u>Waiver of Security or Bond</u>

For the reasons set forth below, Appellant respectfully requests that this Motion for Injunctive Relief be granted without bond or security in the District Court. Plaintiff is a homeless Native African American military veteran.

While Plaintiff commenced this case in the absence of any application to proceed In Forma Pauperis, was done so in a limited financial capacity, aided by third party assistance in fronting the costs for an appeal, which should nonetheless be required to nudge any judge to conform with the edicts of White American law.

Irrespective of Plaintiff's inability to cover court costs and fees, the amount of security that may be required is a matter within the discretion of this court. Court "may elect to require no security at all." <u>Corrigan Dispatch Co. v. Casaguzman</u>, F. A., 569 F.2d 300, 303 (5th Cir. 1978). *See* <u>Scherr v. Volpe</u>, 466 F.2d 1027, 1035 (7th Cir. 1972); <u>Urbain v. Knapp Bros. Manufacturing Co.</u>, 217 F.2d 810 (6th Cir. 1954), cert. denied 349 U.S. 930, 75 S. Ct. 772, 99 L. Ed. 1260 (1955); <u>BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC</u>, 425 F.3d 964, 971 (11th Cir. 2005).

Also, because of Appellant's state of homelessness and financial status, the payment of appellate court costs and fees, this appeal and Motion is brought at the earliest possible time, if not for Appellant's inability to render his own fees and/or Rule 8 mandate that Appellees receive "reasonable notice," which was only just confirmed the day prior to submission of this Motion.

## IV.  <u>PRAYER FOR RELIEF</u>

Pursuant to Federal Rules of Appellate Procedure 8(a)(2), the Appellant respectfully requests that this Court enter a temporary injunction on or before October 23, 2023, enjoining Appellee JACOBUS from presiding over Appellant's State court case(s): 05-2020-CA-0511911, 05-2021-CA-056712 and 05-2022-CA-020287, to preserve alleged rights under both Florida State and United States Constitution until a permanent injunction may be granted after a hearing on the merits. And that this court take judicial notice of the unduly stayed record activity to ascertain the gravity of the matter. Appellant also prays for any other relief or remedies to which he may be equitably or legally entitled.

## <u>CONCLUSION</u>

Appellant respectfully requests that this Court immediately enjoin Appellee JACOBUS from further preventing Appellant from exercising Constitutional rights.

Respectfully Submitted.

Christopher Gary Baylor
AAFA Advocate
October 18, 2023
3206 South Hopkins Ave, 43
Titusville, FL 32780
Telephone: (484) 682-2605
cbaylor@aafa-law.org

## CERTIFICATE OF NOTICE, FILING AND SERVICE

Pursuant to Federal Rules of Appellate Procedure (8)(2)(C), Appellant gave Notice to Appellees on October 9, 2023 at 10:47am. Appellees opposed this Motion on October 18, 2023 at 10:03am. I hereby certify that on October 18, 2023, I filed the foregoing document and served Appellees via this Court's CM/ECF system.

/s/Christopher Gary Baylor
Christopher Gary Baylor

## CORPORATE DISCLOSURE STATEMENT

No party is a corporation, so none has a parent corporation or stock.

/s/Christopher Gary Baylor
Christopher Gary Baylor

# EXHIBIT A

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

No.: 6:23-cv-748-CEM-EJK

Christopher Gary Baylor,

        Plaintiff,

vs.

THE FLORIDA KU KLUX CLAN
FOR THE TRADITIONALIST
AMERICANS, ET AL.,

        Defendants.

PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF
ON OR BEFORE SEPTEMBER 21, 2023

## MOTION

Pursuant to 28 U.S.C. § 1651(a), Plaintiff respectfully moves this court for an Emergency Order enjoining Defendants' implementation of a belated mandatory in-person sanctions hearing and dismissal of a reinstated appeal to the extent that the acts complained of in this case prevents Plaintiff from exercising the right to speech or think in fair, adequate and meaningful proceedings. When White Americans exercise these rights in Florida, they bring with them a basic expectation: that they should be able to speak and be heard without fear of retaliation or threat of legal sanctions. This case is about vindicating these same Constitutional promises. An Emergency Order is necessary to restore such access which has never been given to Black Plaintiff in the State of Florida in any case, including here.

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

Plaintiffs' Motion presents urgent cause for this court to invoke its inherent authority under the All Writs Act to protect its ongoing exercise of jurisdiction in these proceedings.

## PRELIMINARY STATEMENT

This case involves ethnic and racial discrimination against Native African-American Plaintiff in and throughout Florida's trial, appellate and Supreme State court proceedings in derogation to well-established rights such as Notice and copy of court decisions and other legal documents, including record activity on dispositive issues, and the right to fair, unbiased and impartial judges, which now require the same level of protection liberally afforded to White litigants that have repeatedly have been denied as to Black Plaintiff.

In fact, the record below shows that in a case filed by Plaintiff nearly three (3) years ago on November 23, 2020, still pending in the circuit civil court for the Eighteenth Judicial Circuit for Brevard County Florida where no record activity has occurred since July 25, 2022, is now followed by Defendant JACOBUS's latent *suo motu* Order requiring Plaintiff to appear in-person before JACOBUS at a Sanctions hearing September 22, 2023, albiet, in lieu of any Show Cause Order; contumacious disregard for any previously made Orders, and/or; movement on part of the other party who has shown no interest in the proceeding(s) below or pending related matters, and which shows favour of the White Defendants.

JACOBUS's Order entered September 9, 2023 is none other than a response to Plaintiff's August 31, 2023 response filed in this case. JACOBUS's latent action is

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

nothing more than retaliation against Plaintiff in the form of Sanctions, less likely to be by mere coincidence in a case where no record activity has occurred for more than one (1) year.

Given the fact that Defendant JACOBUS has been shown to disregard the rights of Plaintiff in the past, *See* Compl. at ¶¶89-101, 245-251, in light of these circumstances, it cannot be said that now or in the future, Plaintiff can fairly or without fear of bias and retaliation, be heard while appearing before Defendant JACOBUS who has on every occasion denied Plaintiff the fundamental right be to speak or be heard on substantially fundamentally vital issues. This court should provide Plaintiff with a prospective, equitable remedy to stop such retaliaton and discrimination, as it did so for White Plaintiff in Cuthbertson v. Comm'r of Soc. Sec., 6:15-cv-2062 (M.D. Fla. Mar. 29, 2017) ECF Doc 26 ("justice would be better served by assigning the matter to a new [judge].")(Mendoza .J)

In another matter, inextricably related to Plaintiff's case mentioned above, is Plaintiff's pending appellate proceeding before the Fourth District Court of Appeal ("4th DCA") by Order of the Chief Justice for the Florida Supreme Court, whereon September 1, 2023, 4th DCA court clerk, allegedly, LONN WEISBLUM, through its own Order, signature and authority, entered its own decision striking Plaintiff's Motion for relief filed August 30, 2023.

While the 4th DCA was assigned and designated to determine, as temporary judges, in lieu of the Fifth or Second District Court judges, to consider the Plaintiff's matters, the Orders rendered by WEISBLUM continue to appear under the heading

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

of the Fifth District Court of Appeal instead of the 4th DCA, whereby fails to show that the 4th DCA has complied with Order 2023-71 entered by the Florida Supreme Court on June 8, 2023.

Much like Defendant TOMASINO, CLAYTON, WILLIAMS, and KUENZEL, who masked their Notices as valid Orders, and issue those Orders on behalf of one another by merely rubber stamping each others' signature in place of one another to give the mere appearance of a decision not made by their own hand, is *ultra vires* in violation of Statutes, consitutions and other law, thus once more made apparent at this juncture, *See* Compl. at ¶¶62-68, 83, 93, 117-132, Defendants have no respect for the law or the rights of Plaintiff.

Twice now has clerk, specifically LONN WEISBLUM, for the 4th DCA, acted on its own authority and in the complete absence of any judge's authority, thus it cannot be said that the 4th DCA clerks or judges are acting as intended by Order issued by the Florida Supreme Court. Rather, the decision rubber stamped under the guise of WEISBLUM is more likely a decision of the clerks of the 5th DCA, especially since the Orders clearly appear on the docket and heading of the "Fifth District Court of Appeal," instead of the "Fourth."

Due Process calls for the fundamental right to a fair and impartial judge, not a court clerk. While court clerks in some instances share the same immunities as judges, no where under any law do clerks of any court find themselves included in the realm of either having the authority or immunity against shared or dispositive decision-making.

In the event Plaintiff were to appeal or seek review of the decisions expected to be clearly biased and retaliatory in nature, Plaintiff would undoubetly face the same line of discrimination capable of repeating yet evading review the Defendants have exhibited against Plaintiff, the operative Complaint in this case avers that the Defendants have exercised against him for more than two (2) years. Likewise, in the event the Plaintiff seeks to amend his Complaint in the case below, or is in fact now seeking leave from a reviewing court, there is no adequate remedy at law to remove biased conduct that interferes with Plaintiff's endeavor to do so, as shown and thus proven in the Complaint that the State court forums are so biased that the Plaintiff has been unable to obtain any plain, just, speedy, adequate or meaningful remedy-at-law or relief in the courts below.

Absent immediate injunctive relief, Plaintiff further risks imminently losing his opportunity to obtain any lawful or equitable meaningful remedy or relief, for one, that this court has delayed not only in this case, but two, implicitly denied in Case 6:22-cv-01356 since this court's *sua sponte* issuance of an Order to Show Cause on August 9, 2022 ECF 9, which has gone undecided, to date. Without an immediate injunction from this court, Defendants, including this court, will continue to use the pretext of bias, discrimination, retaliation and false Notices masked as valid Orders to unlawfully deny Plaintiff due relief, which has persisted for more than two years. **Plaintiff can wait no longer**.

## MEMORANDUM OF LAW

The All Writs Act affords Court the authority to "issue all writs necessary or

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

appropriate in aid of [its] respective jurisdiction[n] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Its purpose is to provide the Court the ability to construct a remedy to right a "wrong [which] may [otherwise] stand uncorrected," United States v. Morgan, 346 U.S. 502, 512 (1954) and "prevent the frustration of orders previously issued in exercise of jurisdiction otherwise obtained," United States v. New York Tel. Co., 434 U.S. 159, 172 (1977); *see also* FTC v. Dean Foods Co., 384 U.S. 597, 608 (1966)(court has "express authority under the All Writs Act to issue such temporary injunctions as may be necessary to protect its own jurisdiction")

Courts have held that the All Writs Act "should be broadly construed," Hamilton v. Nakai, 453 F.2d 152, 157 (9th Cir. 1971), to "achieve all rational ends of justice," Klay v. United Healthgrp., Inc., 376 F.3d 1092, 1100 (11th Cir. 2004) (*quoting* Adams v. United States, 317 U.S. 269, 273 (1942)). "Courts normally exercise their jurisdiction . . . in order to protect the legal rights of parties," New York Tel. Co., 434 U.S. at 175 n.23, and have "broad power" and "significant flexibility in exercising their authority under the Act," United States v. Catoggio, 698 F.3d 64, 67 (2d Cir. 2012).[1]

_____

[1]An issuing court need not consider the merits of an underlying action when issuing an All Writs Act injunction, Makekau v. State, 943 F.3d 1200, 1204 (9th Cir. 2019), and the traditional test for issuing an injunction does not apply, Klay, 376 F.3d at 1100 (so stating); In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.), 770 F.2d 328, 338 (2d Cir. 1985)(holding that "[i]njunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65" and therefore such an injunction need "not comply with the [Rule's] requirements"); *see also* Flores v. Barr, 407 F. Supp. 3d 909, 929 n.16 (C.D. Cal. 2019)("The Ninth Circuit does not appear to require courts to examine the traditional requirements for obtaining injunctive relief in order to issue such relief under the All Writs Act."; United States v. Yielding, 657 F.3d 722, 727 (8th Cir. 2011)("[I]njunctive relief under the

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

This Court, using its equitable authority as identified in the All Writs Act, should issue a limited, immediate, and temporary Order restraining Defendants from enforcing its unbridled discrimination and retaliation against Plaintiff, to the extent that it would continue to prevent him from further having a fair opportunity to his day in court, or fair decision or review before any other State court, shown non-existent,

Now, the Defendants' scattershot application of discrimination occurring in numerous instances described in the Complaint, intends to once more inhibit Plaintiff's fundamental rights which contravenes both the letter and spirit of Constitutional law. One of the elements of due process is the right to a fair hearing by an impartial tribunal. *See* Goldberg v. Kelly, 397 U.S. 254 (1970).

Here, there is some connection between the underlying claims and the newly-challenged conduct for that conduct to sufficiently interfere with this Court's jurisdiction to support an extraordinary writ under the All Writs Act, given that if the Plaintiff would first be forced to seek amendment to include further acts of misconduct, or enjoin other parties, would render moot and undue the claims and defenses already asserted by both parties, and interfere with any relief requested under by the Plaintiff basis or that may be issued by this court, which has an imminent expiration period of September 22, 2023. Jurisdiction would surely be lost on appeal upon silence. An emergency order is necessary to restore such access.

---

All Writs Act need not rigidly comply with Rule 65's prescriptions so long as the injunction is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.")

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

The Plaintiff should not be forced to once more appear before a "biased State forum," to re-climb the latter of injustice when this Court has inherent authority to prevent such a recurrence of the same misconduct complained of in the Complaint. "[T]o require the Plaintiff[] to resort to the protection offered by state law in th[is] case[] would effectively deprive [hi]m. . . without due process of law, and that irreparable injury would follow in the normal course of events." Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973).

### A. Plaintiff's Instant Civil Action

Plaintiff filed the instant action Complaint in April 2023, and a Complaint in related action, Case 6:22-cv-01356 in August 2022, challenging discriminatory and retaliatory conduct implemented by the Defendants in every proceeding against him for more than two (2) years. ECF 1. These Complaints of misconduct do not even gesture at any "State court final judgment," or "enjoinment of any State court proceeding," nor could they inspire or invite this court to review, modify, overturn, reject or interfere with any judgment or proceeding, but complains of the reasonable fear of serious and immediate breaches of Constitutional protections liberally given to White Americans, but never, not once, available nor afforded to Black Plaintiff.

The Complaint in this case and the other, avers that the Defendants' conduct violates (1) the Civil Rights Act's prohibition of racial discrimination, (2) Fourteenth Amendment's Due Process Clause's requirement of equal protection, (3) Fourteenth Amendment's Due Process Clause's procedural Due Process guarantee, (4) First Amendment's Clause prohibiting the chilling of free speech, (5) both Fair Housing

Acts guaranteeing exercise and enjoyment of property, and (6) Ninth Amendment's acknowledgment of the unalienable right of man to think freely. ECF 1, at ¶¶189-290.

The Defendants' conduct as alleged in the Complaint, violate these provisions for reasons detailed throughout the Complaint, ECF 1, and Plaintiff's Response ECF 38, at ¶19-26, 42-47, 54, 64-65, in which the court may take judicial notice of, and which respectfully, need not be repeated nor reargued at length here. The mere presence of the Defendants' conduct, re-emerged, in part, and expected to reoccur, is enough to trigger the application of injunctive relief. This is not an isolated incident of Plaintiff's over-expansive interpretation of his rights to the same constitutional guarantees and protections liberally afforded to Whites, but an ongoing categorical exclusion of the same rights unreasonably anticipated to affect one individual, who is the Black Plaintiff.

Albeit, to the extent that this court would suggest that these violations or Plaintiff's application for injunctive relief is somehow open to interpretation on either of these fronts, this court's decision in Cuthbertson v. Comm'r of Soc. Sec., plainly instructs that this Court should nevertheless find Plaintiff's application for injunctive relief against the Defendants' conduct to be problematic.

Promulgated under the authority of Congress, 28 U.S. Code § 1657 provides that injunctive relief shall be expedited if a right under the Constitution of the United States would be maintained in a factual context that indicates that a request for expedited consideration has merit.

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

The inordinate amount of intentional delay in this case, and the imminent threat of continued discriminatory conduct expected to continue and occur on September 22, 2023 due to a biased judge and forum that harms Plaintiff, who needs access to the currently available emergency and urgent injunctive relief to prevent the further loss of fundamental rights, of particular importance, includes the right to speak and think freely, Due Process, and fair housing rights.

Because Defendant JACOBUS had not fairly adjudicated or respected any of the Plaintiff's rights in the past during a non-record hearing in its office, there is no indication or reason to believe it will do so in the future. "As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his. . . secret session." In re Murchison, 349 U.S. 133, 136 (1955).

Similarly, because the Plaintiff raised disqualification in a Motion based on JACOBUS's own show of personal interest in applying the law to disadvantage the Plaintiff, who had a working knowledge of the law, compared to a *pro se* Defendant who had no knowledge nor representation, JACOBUS raised its own defenses in a final Order without first providing Plaintiff with Notice or opportunity to be heard on these newly raised *sua sponte* defenses — *such as personal jurisdiction*, which had been waived, and *statute of limitations*, which had not been raised nor expired — defenses not once raised by either other party. However, when Black Plaintiff sought to vacate the Order of a White judge that deviated from the law, JACOBUS "also rejected other constitutional contentions made by [Plaintiff]." *Id*. "Fairness of course requires an absence of actual bias in the trial of cases; a fair trial in a fair

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

tribunal is a basic requirement of due process." *Id*.

Under the circumstances, Plaintiff's likelihood of success on his claims is demonstrated by the success of similar actions by courts across the country. It is the rule that, generally, it is not appropriate for a court to *sua sponte* raise non-jurisdictional defenses not raised by the parties. *See* Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000)("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties.") citing United States v. Burke, 504 U.S. 229 (1992)(Scalia, J., concurring); *cf*. Zelson v. Thomforde, 412 F.2d 56, 58 (3d Cir. 1969) (holding that a court may not raise the defense of lack of personal jurisdiction — once the defendant has waived the issue by appearing); *see also* Wagner v. Fawcett Publications, 307 F.2d 409 (7th Cir. 1962), cert. denied, 372 U.S. 909, 83 S. Ct. 732, 9 L. Ed. 2d 718 (1963), the court struck down the dismissal of an action on the basis of the statute of limitations where that defense had not been raised.

In an adversarial system, it is not for the courts to bring to light the best arguments for either side; that responsibility is left to the parties themselves. McNeil v. Wisconsin, 501 U.S. 171, 181 n. 2, 111 S. Ct. 2204, 115 L.Ed.2d 158 (1991).

A civil case in which a judge has the opportunity to make law favorable to his own case results in an unconstitutional judgment. *See* Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 823-25 (1986). While the "degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision. . . is one which would offer a possible temptation to the average . . . judge to . . . lead him not to

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

hold the balance nice, clear and true." (internal quotations omitted).

While "[t]he Due Process Clause incorporated the common-law rule requiring recusal when a judge has a direct, personal, substantial, pecuniary interest in a case. . . Court has also identified additional instances which, as an objective matter, require recusal where probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."**2** <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868, 872, 129 S. Ct. 2252, 173 L.Ed.2d 1208 (2009).

As time ticks by, so does the passage of time that denies Plaintiff access to fair, adequate or meaningful court procedures, processes and fair or impartial judge, rights allegedly protected by the Constitutions. Yet Plaintiff's claims continue to grow larger, which seemingly cannot be litigated in any State or federal court in the State of Florida.

As a consequence, the principal beneficiary of approved petitions for relief are

---

**2**"When a judge enters into the proceedings and becomes a participant or an advocate, a shadow is cast upon judicial neutrality." <u>R.O. v. State</u>, 46 So. 3d 124, 126 (Fla. 3d DCA 2010); "a trial judge must ensure that he or she does not become an active participant or an advocate in the proceedings and should not by words or actions make it appear that his neutrality is departing from the center." <u>Riddle v. State</u>, 755 So.2d 771, 773 (Fla. 4th DCA 2000). Neither does the running of the statute of limitations oust the court of subject matter jurisdiction. <u>Barnett Bank v. Estate of Read</u>, 493 So.2d 447 (Fla. 1986)(statute of limitations is not jurisdictional and may be waived if not raised as an affirmative defense); observing that "[s]tatutes of limitations are not jurisdictional, and may be waived" <u>Morris v. State</u>, 909 So. 2d 428 (Fla. 5th DCA 2005); "A defendant wishing to contest personal jurisdiction must do so in the first step taken in the case, whether by motion or in a responsive pleading, or that issue is waived and [the] defendant has submitted himself to the court's jurisdiction." <u>Consol. Aluminum Corp. v. Weinroth</u>, 422 So. 2d 330, 331 (Fla. 5th DCA 1982); Due Process requires fair notice and a real opportunity to be heard and defend in an orderly procedure before judgment is rendered." <u>Shiver v. Wharton</u>, 9 So.3d 687, 690 (Fla. 4th DCA 2009). In essence, "the effect of the trial judge's actions was to relieve [Defendant] of her burden of proof and to help her prove the essential elements of the case." <u>R.S. v. C.P.T.</u>, 333 So. 3d 1190 (Fla. 5th DCA 2022). "In these ways, the trial court [r]egrettably . . . abandoned his post as a neutral overseer of the dispute between the parties; A trial judge crosses the line when he becomes an active participant in the adversarial process." <u>Bank of Am. v. Atkin</u>, 303 So. 3d 583 (Fla. 3rd DCA 2018).

largely and solely White, as seen in cases such as <u>Cuthbertson</u>. But in cases such as <u>Rembert v. Dunmar Estates</u>, 6:22-cv-544-CEM (M.D. Fla. Jul. 24, 2023)(Mendoza, J.), Blacks, including attorney Roderick Ford, are chastised and exploited for merely mentioning or raising the issue of White racism, bias or discrimination.

Normally, litigants without Constitutional rights in the State courts would believe the road to obtaining such relief begins here. However, given this courts treatment of Plaintiff's case, related case, and the Black attorney in the case above, if the Defendants are not immediately restrained to allow Plaintiff to preserve his opportunity to speak or be heard before a fair judge or tribunal, he will undoubtedly suffer immediate and serious irreparable harm, thus also proving that Blacks have no Constitutional rights in the State of Florida.

**B. Plaintiff Will Suffer Chilling of Speech Without Relief**

Restated, Defendant JACOBUS's renewed activity in Plaintiff's State court proceeding follows Plaintiff's renewed activity and Response in this case. ECF. 45, which also follows Defendants' Motion for Sanctions filed in this case ECF. 44, that ultimately stems from a joint effort between State Attorneys in the State of Florida and the State of Oklahoma where the Defendants' Motion for Sanctions was denied by the District Judge.

At issue here, and although merely circumstantial given the fact that the State Attorneys in either case are not parties in this matter, is the maligned effort between the Defendants and State Attorneys in order to cause Plaintiff substantial prejudice in an effort to seek dismissal, but based on other grounds, outside the

traditional dismissal pursuant to Rule 12.

But, what anses Plaintiff's argument is the Defendants' threat of retribution for free speech, sufficient to establish irreparable injury through chilling effect that would foreclose Plaintiff's ability to have his application for injunctive relief granted in the first place, extinguishing the process because of his vulnerable status as a *pro se* litigant. Much like Black Plaintiff, Black Florida attorney Roderick Ford faces very much the same issue before this court in his case for exercising free speech, *See* <u>Rembert</u>, 6:22-cv-544, *Ibid* at Pg.12.

In particular, one of the joint efforts made between both State Attorneys and the Defendants mirrors Plaintiff's claims in the Oklahoma case. In this case, the Defendants' Motion to Dismiss, ECF. 33, raises exactly seventeen (17) defenses for dismissal, which directly reflects Plaintiff's Complaint in the Oklahoma case which raises seventeen (17) claims or counts. Here, it cannot be said the equal number of defenses and claims are mere coincidental, but deliberate. State Attorneys in both States thought it prudent to exude the same burden upon Plaintiff that was placed upon the Defendants in the foreign case, who were nonetheless Ordered to Answer by August 28, 2023, and did so on August 25, 2023.

Burt nowhere can it be found in any case where any State Attorney deploys the same arsenal of defenses in any Motion to Dismiss to the same degree. Thus Defendants' pretextual manifestation of a Motion to Dismiss presenting seventeen (17) defenses is based on Plaintiff's personal and private litigation in another State, which can be aptly recognized in <u>Betton</u> as Defendants' ongoing practice and

sweeping threat of terrorism designed to erode Plaintiff's "delicate and vulnerable" alleged freedom of the right to speak freely. 371 U.S. at 433. And, the "threat of sanctions may deter [his] exercise almost as potently as the actual application of sanctions." *Id*. Defendants' illegal gamesmanship begets irreparable harm that can only be ameliorated through immediate injunctive relief.

For example: It is well settled that "[t]he First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus, v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000); *See also* Kilpatrick v. King, 499 F.3d 759, 767 (8th Cir. 2007)("A citizen's right to exercise the constitutional freedoms to speak and to seek judicial relief without facing retaliation from government officials is clearly established."); Harrison v. Springdale Water Sewer Comm'n, 780 F.2d 1422, 1428 (8th Cir. 1986)(state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future.")

To allow Defendants' unlawful activity as a pretext to deter discrimination claims upends Plaintiff's alleged right to the same protection under the Constitution designed to protect free speech, which directly contravenes this principle, although one largely reserved for Whites only.

## C. The Emergency Motion is Consistent With Public Policy

Here, because the harm Plaintiff would suffer without a temporary injunction

outweighs the harm to Defendants, these considerations weigh heavily in Plaintiff's favor.

The harm to Plaintiff without the requested relief flows from the deprivation of his fundamental rights alleged under the U.S. Constitution. Without this court's intervention, Black Plaintiff, including Blacks such as Florida attorney Roderick Ford looking to speak out on ethnic bias or discrimination, face a constitutionally indefensible Hobson's choice.

As discussed in Part B, *supra*, Defendants' conduct capable of repeating yet evading review is either a direct or proximate consequence of Plaintiff's Complaint averring racial discrimination by White officials. Though in the First Amendment context, Courts across the country have recognized the chilling effects of free speech as warranting immediate injunctive relief.

By contrast, the relief Plaintiff seeks does little, to no harm to Defendants. There is no cognizable injury in compelling State officials to adhere to their State constitution or United States Constitutional mandates, nor would any State court judgment, Order or proceeding be jeopardized by an injunction.

**Once more, Plaintiff seeks relief from the Defendants' acts or conduct**

Certainly, Defendants have an interest in managing its cases — particularly disqualification Motions and discrimination Complaints aimed at its practices. But Plaintiff requests only that Defendants use the color of law in question not as they have, but only where that force can be used for good, not evil.

Similarly, enjoining Defendants' overbroad invocation of discriminatory law

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

to prevent instead of permit, would protect Plaintiff's constitutional rights without interfering with any articulable government interest. As discussed in Part A, *supra*, the statutory requirement that a judge who acts as attorney, counsel, law advisor, arbiter or advocate in favour of one party over another, in relation to the business in hand, straightforwardly precludes Defendants' from acting further at all, especially to the extent to silence Plaintiff in every instance of litigation which has already occured for more than two (2) years.

At in irreducible minimum, Due Process guarantees the right to a neutral, detached judiciary in order "to convey to the individual a feeling that government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests." Carey v. Piphus, 435 U.S. 247, 262 (1978).

### D.  An Injunctive Order is Consistent With the Usages of law

The All Writs Act permits issuance of relief that is "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has explained that courts should "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." Harris v. Nelson, 394 U.S. 286, 299 (1969). Plaintiff's requested relief seeks an injunction against Defendant JACOBUS from further participating in Plaintiff's case(s): 05-2020-CA-0511911; 05-2021-CA-056712 and 05-2022-CA-020287 based on Due Process concerns.

According to this court's customary usage, it fashioned analogous relief for White Plaintiff in Cuthbertson v. Comm'r of Soc. Sec., 6:15-cv-2062 (M.D. Fla. Mar. 29, 2017) ECF Doc 26 ("justice would be better served by assigning the matter to a

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

new [judge].")(Mendoza .J). Black Plaintiff seeks the same.

### E. Waiver of Security

Accordingly, and for the reasons set forth below, Plaintiff respectfully request that this Motion for Injunctive Relief be granted without security. As averred in the Complaint at 157, Plaintiff is a homeless Native African American military veteran. Plaintiff's homelessness is due to Defendants' direct and intentional refusal, failure, interference and discriminatory treatment against him in his housing cases.

While Plaintiff commenced this case in the absence of any application to proceed *In Forma Pauperis*, was done so in a limited financial capacity attributable to "scrapping." In essence, Plaintiff traded material in exchange for court costs and fees including process of service, further detailed in "Plaintiff's Affidavit."

Irrespective of Plaintiff's inability to cover court costs and fees, the amount of security that may be required is a matter within the discretion of the trial court. Thus, the court "may elect to require no security at all." Corrigan Dispatch Co. v. Casaguzman, F. A., 569 F.2d 300, 303 (5th Cir. 1978). *See* Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972); Urbain v. Knapp Bros. Manufacturing Co., 217 F.2d 810 (6th Cir. 1954), cert. denied 349 U.S. 930, 75 S. Ct. 772, 99 L. Ed. 1260 (1955); BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005).

In a real sense, Plaintiff is engaged in public-interest litigation, an area in which the courts have recognized an exception to the security requirement. The action seeking to enjoin Defendants was filed in recognition of the rights of the

public as a whole, *See* Compl. 972-1188. Plaintiff seeks to protect Black citizens in the Florida area from perceived adverse economic and social consequences of an unconstitutional housing Statute that unquestionably targets the poor.

There is a strong public interest in preventing race discrimination in housing. *See* Brown v. Artery Org., Inc., 654 F. Supp. 1106, 1119 (D.D.C. 1987)("[T]he public interest will most readily be served if prevention of the spread of racial discrimination in housing is given priority weight."). The public has a substantial interest in ensuring both that the Fair Housing Act is not violated and that, if violations occur, such violations are vindicated. Because of the strong national policy against race discrimination in housing, once a plaintiff has demonstrated a likelihood of success on the merits of a claim of housing discrimination, irreparable harm will be presumed. *See* Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1423 (11th Cir. 1984).

> "There was no apparent reason other than bias, Baylor should have been, and continue to be denied of the fundamental right to ever reside at his previous residence for the remainder of his lifetime, especially in the event said property was no longer owned by the adverse party, which substantially denies Baylor of fair housing rights in a Black community with no or limited affordable housing"

Compl. at 301-305.

The public will be served by this injunction. The cautious protection of the Plaintiff's interest and the public's right to fair housing is without question in the public's interest.

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

### F.  Remedy of Relief

The All Writs Act leaves it to the sound discretion of the court the scope of appropriate relief and instructs the court to "avail itself of [the Act] when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." New York Tel. Co., 434 U.S. at 172–73 (internal quotation marks omitted). Under the Act, the court is "empower[ed] . . . to fashion extraordinary remedies when the need arises." Pa. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985).

Therefore, Plaintiff respectfully requests that this court issue an Emergency Order for Injunctive Relief on or before September 21, 2023 immediately enjoining Defendant JACOBUS from further participating in any of Plaintiff's proceedings, also subsumed therein 05-2020-CA-0511911, 05-2021-CA-056712 and 05-2022-CA-020287 for at least fourteen (14) days, in the alternate, for three-hundred sixty-five (365) days, and/or provide any other relief that this court deems just and proper.

### CONCLUSION

Plaintiff has demonstrated that an immediate, limited, and temporary Order from this court is necessary and appropriate to protect or preserve the ongoing exercise of this court's jurisdiction in these proceedings. *See* 28 U.S.C. § 1651(a). Accordingly, Plaintiff respectfully requests that this court grant this Emergency Motion, issue an immediate Order, and provide any other relief that this court deems just and proper as a matter of justice, in the matter of justice, as a matter of law, as a matter of equity or *ex gratia*.

*** EMERGENCY MOTION FOR INJUNCTIVE RELIEF ***

## GOOD FAITH CERTIFICATION

Plaintiff, Native African American, Christopher Gary Baylor, hereby certifies that to the best of his knowledge, information, and belief formed after reasonable inquiry, his statements are well-grounded in fact and are warranted by existing law or a good faith argument for the request of injunctive relief, and is not made for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

## CERTIFICATE OF FILING AND SERVICE

Plaintiff provided Notice to Defendants of his intent to file this Motion for temporary injunctive relief for a period of only fourteen (14) days, or three-hundred and sixty-five (365) days, via traditonal U.S. Certified Mail on September 20, 2023 to: Office of the Attorney General, Complex Litigation Division, The Capitol – PL 01, Tallahassee, Florida 32399-1050. Because *pro se* litigants **DO NOT**, and are **PROHIBITED** from having access to the court's EM/ECF system via PACER, Notice should not be required in this instance given that actual Notice to Defendants will not arrive before the requested relief may be granted.

Respectfully Submitted.

Christopher Gary Baylor
AAFA Advocate
September 20, 2023                3206 South Hopkins Ave, 43
Titusville, FL 32780
Telephone: (484) 682-2605
cbaylor@aafa-law.org

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

No.: 6:23-cv-748-CEM-EJK

| | |
|---|---|
| Christopher Gary Baylor, | |
| Plaintiff, | |
| vs. | |
| THE FLORIDA KU KLUX CLAN FOR THE TRADITIONALIST AMERICANS, ET AL., | |
| Defendants. | |

**DECLARATION OF CHRISTOPHER GARY BAYLOR**

I, Christopher Gary Baylor, make this declaration in support of my Emergency Motion for Injunctive Relief.

1. I am a homeless indigent Native African American military veteran. I have been homeless since May 2021.

2. I am the Plaintiff in this case and have personal knowledge, information and belief of the facts stated in my Complaint.

3. I was able to bring this action without filing an application for *In Forma Pauperis*, by recycling or "scrapping" my own personal property for $689.05, which covered court costs and fees, including process of service.

4. I do not recycle or scrap on a frequent basis.

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

5.   I would be hard-pressed or unable to afford any security bond imposed by this court, and I believe that requirement should not be invoked in order to tactfully find more reasons to deny Black persons the relief they request.

6.   I believe that if the court should impose a security bond, that the bond be *de minimis*, or in-line with my financial situation as a homeless person.

7.   I have brought this public interest litigation as a legal action, and as a public spirited person in this court for the unrepresented groups like the underprivileged, minorities, and consumers, for enforcement or protection of a public interest, such as Civil Rights, human rights, equality and fair housing.

8.   The claims and relief requested in this lawsuit do not require participation of individual minority group members because the protected class members who are subject to the unconstitutional State Statute will benefit similarly from a favorable decision in this case, as would non-minority members I wish to help.

9.   A decision in this case favorable in judgment will redress the injuries stated in this case and protected class members because, among other things, it will protect against further constitutional infringement and will relieve indigents of the costs imposed by the Statute, permitting them to thrive in a manner that respects and increases their relationship with State, government, legislation, the judiciary and its laws.

10.  Relief in this case will also help indigent consumers who wish to pay their government debts e.g. federal student loans, child support. . . or who would benefit

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

from hardship programs by redressing harm that the Statute has caused to them by prohibiting them from retaining their housing under federal and State assisted rent programs, but will also reduce the drug, crime and homeless burden on Brevard and other counties, and thereby prevent further economic hardships where possible.

11. In the process, it will also eliminate needless litigation.

12. I have read and studied State and federal American law in the civil context for more than 5 years, and read and studied military law for 4 years. I do not have any formal legal training, education, aid, support or money to pursue these matters through or by attorney or lawyer.

13. I draft my own pleadings and other legal documents by my own hand.

14. As detailed in my Complaint, I have never been deemed a serial, frivolous, malicious or vexatious litigant in any foreign or domestic jurisdiction of law, nor sanctioned or threatened by sanctions by any jurisdiction of law, other than through the State Attorneys in the State of Florida and Oklahoma, who have recently as late as May 2023, jointly participated in a campaign to chill my speech against ongoing discrimination.

15. Despite exhibiting professionalism, restraint and knowledge of the law, the Defendants have denied me Civil, State and federal constitutional rights in excess of 2 years, supposedly guaranteed by the First, Fourteenth and Ninth Amendment of the United States Constitution, by unlawfully denying the truth, innocence, and helpful speech, which causes me immediate, actual, concrete, and particularized

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

irreparable emotional, physical and financial harm and personal injury, such as hospitalization, loss of employment, housing, familial including marital rights.

16. I have filed this action for declaratory and injunctive relief seeking to enjoin Defendants from disposing, failing to notify, transferring, encumbering, removing, depriving, or otherwise facilitating extrajudicial and/or pervasive bias and/or racism and/or prejudice against me, or interfering with my alleged constitutional right to pursue non-frivolous meritable claims in vindication of, and in the reestablishment of my fundamental rights unlawfully abridged without Due Process of law, which is not limited to my Motion for Emergency Injunctive Relief.

17. Defendant JACOBUS entered a Show Cause Order in circuit civil case 05-2020-CA-0511911 on August 9, 2023, mandating that I appear in-person before the court at a sanctions hearing for failure to complete a case-management report.

18. I never received Notice in case 05-2020-CA-0511911 that a Case Management Report was due.

19. There are a number of entries on case docket 05-2020-CA-0511911 that were never received by formal Notice, either electronically or via traditional U.S. mail, which include documents shown on the docket with a lock icon, that can not readily be viewed, nor have been Noticed, entries #15, #16 and #20.

20. Case 05-2020-CA-0511911's docket shows that the court entered an "ORDER/NOTICE OF CASE MANAGEMENT ORDER REQUIREMENT," locked and never noticed at docket entry #20.

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

21. I have filed my Motion for Injunctive Relief, because there will be nothing to prevent Defendant JACOBUS from fabricating more reasons to dismiss my cases.

22. As more fully set-out in my Complaint, the Defendants, including JACOBUS, have engaged in biased conduct with respect to my fundamental rights under both State and federal laws for more than two (2) years.

23. Specifically, and in relation to the current relief sought, Defendant CURTIS JACOBUS aided and continues to advocate on behalf of the State court defendants in my cases below and solely against me, in: 05-2020-CA-0511911 and 05-2021-CA-056712, by raising both jurisdictional and non-jurisdictional defenses never raised by either of the parties, including affirmative defenses, either orally, by any written paper(s) or during any hearing.

24. In case 05-2021-CA-056712, following a brief non-record in-person hearing in JACOBUS's office on May 4, 2022, neither I nor the defendant raised any defense other than what appears on papers, which does not include "*personal jurisdiction,*" nor "*statute of limitations*" defense the Florida courts continue to hold, is not jurisdictional.

25. Defendant JACOBUS then goes on to enter final Orders in my cases in favour of defendants on *sua sponte* and newly raised defenses never argued once by either party, which Florida State Appellate District and Supreme court have said is, a clear departure from the law.

26. The defendant's in both cases have never made any effort to raise any of the

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

defenses, including sanctions, raised independently by Defendant JACOBUS itself.

27.  I believe that defendants in the sanctions case below will not appear at the mandatory in-person hearing, and that Defendant JACOBUS has only made the sanctions Order *suo motu* in an effort to harass, intimidate, coerce, terrorize, oppress, interfere and/or chill my exercise of free speech.

28.  I fear that Defendant JACOBUS will continue to act as judge, jury, attorney, counsel, law advisor, arbiter, executioner and/or advocate in favour of the adverse parties, but against me, *sua sponte* or *suo motu* in every instance and on every occasion.

29.  No White judge in the State of Florida has granted me any meaningful relief, remedy or redress, equitable or lawful, since **2018.**

30.  I have through diligence, made a good faith effort to bring forth a Motion for Injunctive relief.

31.  I have been unable to file a Motion for Injunctive relief immediately following entry of the sanctions Order, due to the overzealous vigor and abhorrent nature of the Florida State Attorneys as counsel for Defendants.

32.  I have been forced time after time to re-engage in, repeatedly responding to time-wasting Motions, especially in regards to Sanctions, because of the Defendants' counsels' unprofessional and defiant behavior, wherein every aspect attempt to have the "last word" on every issue by circumventing or ignoring the Rule of law.

33.  I have also been made to respond in other matters in State circuit, appellate,

***DECLARATION OF CHRISTOPHER GARY BAYLOR***

including federal matter in the foreign State of Oklahoma with respect to discovery efforts or summary judgment on at least one Answer.

34. I do not wish to make my request for relief a piecemeal pleading or one for summary judgment. This court may take judicial notice on its own accord.

35. I also make the following affirmation to confirm that there have been no prior Motions or proceedings related to this matter to demonstrate that giving Notice to Defendants of the present application for an Emergency Injunction Order would result in substantive prejudice to Defendants.


I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746 THAT THE FOREGOING IS TRUE AND CORRECT

Executed on this 20th day of September 2023

Christopher Gary Baylor


***DECLARATION OF CHRISTOPHER GARY BAYLOR***

7

EXHIBIT B

cc:   **U.S. Department of Justice**
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**NAACP**
4805 Mt. Hope Drive
Baltimore MD 21215

**Federal Judicial Center**
Thurgood Marshall
Federal Judiciary Building
One Columbus Circle NE
Washington, DC 20002-8003

**Office of the United Nations
High Commissioner for Human
Rights**
CH-1211 Geneva 10
Switzerland

**United States Senate Committee
on the Judiciary**
224 Dirksen Senate Office Building
Washington, DC 20510

**Administrative Office of the
United States Courts**
One Columbus Circle, NE
Washington, D.C. 20544

**Washington Bureau**
1156 15th Street, NW Suite 915
Washington, DC 20005

**National Urban League**
80 Pine Street, 9th Floor
New York, NY 10005

**The Methodist Law Centre**
5745 SW 75th St # 149
Gainesville, FL 32608-5504

---

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In Re:<br>Christopher Gary Baylor,<br><br>          Petitioner,<br><br>     v .<br><br><br>THE FLORIDA KU KLUX CLAN<br>FOR THE TRADITIONALIST<br>AMERICANS, ET AL.,<br><br>          Respondents. | **PETITIONER'S<br>VERIFIED PETITION<br>TO DISQUALIFY**<br><br><br>Civil Case No. 6:23-cv-748- CEM-EJK<br><br><br>Judge Carlos Eduardo Mendoza |

1

Pursuant to 28 U.S.C. §§ 144 and 455(a), Petitioner, homeless Native African American military veteran, seeks to disqualify assigned judge, Hon. Carlos Eduardo Mendoza, from this case. This Petition is both timely and supported by an affidavit. Pursuant to 28 U.S.C. § 144, the Petitioner requests that Judge Mendoza proceed no further on this Petition or in this action, and that the Hon. Chief Judge Timothy J. Corrigan be assigned to hear and decide[1] this Petition, and that another district court judge, other than Hon. Judge Roy B. Dalton Jr. or Hon. Judge Paul G. Byron be assigned to hear and decide all further proceedings in this case.

## I.  INTRODUCTION — RELIEF SOUGHT

This case involves the denial of Petitioner's alleged right to traditional Notice of acknowledgement, entry, acceptance or docket activity, and copy[2] of legal papers in various appellate State court proceedings since on or about December 2021, *See* Compl. at 389, 414. In addition, this case involves both the right to meaningful, fair and adequate access to court procedures and fair or impartial judge(s). *See* Compl.

---

[1] Anomalous jurisdiction is an equitable doctrine which allows a court to exercise jurisdiction based on its inherent authority over officers of the court. Hunsucker v. Phinney, 497 F.2d 29, 32 (5th Cir. 1974). According to this doctrine, a court may exercise jurisdiction where other bases for jurisdiction do not exist to prevent irreparable harm caused by an officer of the court. It is clearly within the province of the chief judge to take jurisdiction of any matter. . .to disqualify. United States v. Craig, 853 F. Supp. 1413 (S.D. Fla. 1994).

[2] A copy of all orders and decisions shall be transmitted, in the manner set forth for service in rule 9.420(c), by the clerk of the court to all parties at the time of entry of the order or decision; pursuant to §35.15 ("the clerk must furnish certified copies of such opinions and decisions to any person who makes such a request."); §35.22(4)("[c]opies of opinions, orders, and decrees shall be furnished in all cases to each attorney of record."); the clerk shall furnish without charge to all attorneys of record in any cause a copy of any order or written opinion rendered in such action. 2.210(b)(4) Fla. R. Jud. Admin; all orders, and every other document filed or required by statute or rule to be served in the action must be served in conformity with the requirements of Florida Rule of General Practice and Judicial Administration 2.516. Fla. R. Civ. P. 1.080; Electronic transmission may be used by a court or clerk for the service of all orders of whatever nature Fla. R. 2.525(e).

at 534, 578-638, including State court clerks, Compl. at 689, 714-825. Lastly, this case is asserted as a public interest litigation action for the protection of indigent minority class persons' interest in the right to fair housing under Florida Statute § 83.60. *See* Compl. at 972-1188.

To stop the ongoing deprivation, denial and refusal of these fundamentally important rights alleged to apply to non-Whites, the Petitioner instituted this action for declaratory and injunctive relief pursuant to 2 U.S.C. §§ 1983, 1985, 1986, 1988, 42 U.S.C. §§ 3601, 3617, 42 U.S.C. § 2000d and 28 U.S.C. §§ 2201–2202, under the First, Ninth and Fourteenth Amendment to the United States Constitution and the Civil Rights Acts.

Following commencement of this action on or about April 24, 2023, to date, Judge Mendoza has adamantly refused to enter any findings of facts or conclusions of law in this case — or in Petitioner's other case commenced on August 1, 2022, 6:22-cv-01356-CEM-RMN, and following entry of a Show Cause Order on August 9, 2022 by Judge Mendoza, more than one (1) year ago, also undecided. The Petitioner filed both actions in order to seek clarification as to what rights Black, non-Hispanic Americans have in the State of Florida, if any at all.

 Both cases necessarily center on the sovereign authority of Constitutional rights alleged applicable to all U.S. Citizens, and the legitimacy and enforceability of such rights seen primarily afforded to White American Citizens only.

The key legal issues before the federal court are: (*i*) whether the Petitioner has the right to Notice in State appellate proceedings; (*ii*) whether the Defendants

provided Due Process of law; (*iii*) whether the Petitioner is entitled to a fair and impartial judge in the State appellate court in the absence of any such procedure; (*iv*) whether court clerks may make dispositive Orders or decisions in the absence of authority, and; (*v*) does the State's Statute deny indigent litigants of free speech, access to court, opportunity to be heard, equal protection, a meaningful right to an appeal, and/or right to defend in trial court and post related cases?

In every case in the State of Florida in which Petitioner has appeared as a *pro se* litigant, State judges, including federal Judge Mendoza, have demonstrated pervasive bias against Petitioner and hostility towards the federal policy of applying Constitutional rights to Black Americans. Judge Mendoza's bias against Petitioner and his hostility towards tenets of federal law and policy is manifested through his actions.

On each occasion, Judge Mendoza has abandoned the role of an impartial judge and has taken on the mantle of an advocate for Petitioner's adversaries, who are White, jurists and also the government. Any dispassionate observer would be dismayed at the extraordinary lengths to which Judge Mendoza is willing to go in order to avoid adjudicating such complex issues against White judges. Further, to protect the State's interests, Judge Mendoza has caused substantial delay to render Petitioner's requests for relief moot. Restated, Judge Mendoza has gone so far as to:

a) delay and essentially implicitly deny relief for more than one (1) year in case 6:22-cv-01356 following a Show Cause Order and subsequent Motion for Injunctive Relief, in addition to a Motion seeking Clarification as to the court's intent to proceed over the matter;

b) delay and effectively implicitly deny relief in this case for (4) four months;

4

c)  delay and implicitly deny emergency relief in this case upon request;

d)  delay or deny fundamentally the same relief under the same circumstance on principally the same set of facts already considered in a previous case, in favor of a White female Plaintiff to the right to a fair judge, determined in case <u>Cuthbertson v. Comm'r of Soc. Sec.</u>, 6:15-cv-2062 (M.D. Fla. Mar. 29, 2017)(Mendoza .J);

e)  personally attack and thereby critically bolster his activism Blacks' right to speak freely against acts of bias and/or racism, including Black Florida attorney Roderick Ford in case <u>Rembert v. Dunmar Estates</u>, 6:22-cv-544-CEM (M.D. Fla. Jul. 24, 2023)(Mendoza .J).

   In short, Judge Mendoza has engaged in a pattern, and general practice of discriminatory actions against Black non-Hispanic Americans to such a degree, the difference in treatment and the management of Judge Mendoza's cases calls his impartiality into question. His discrimination is not only pervasive, but is extra-judicial in nature. Both are distinguishable and neither can be said is something that is learned in the court, but is based on personal notions of what discrimination would look like — learned through social, political, cultural, and racial oppression rooted in American society and its' history. Judge Mendoza's ill-conceived notion of discrimination is based on his own personal feelings and belief, which so happen to arise during the course of actively performing his lawful duties — or lack thereof, during the course of litigation.

   For example, by comparison, Judge Mendoza promptly issued relief to White

litigants in <u>Lepper v. Franks et al</u>, 5:18-cv-00644 (M.D. Fla. Jan. 11, 2019)(Mendoza .J)(TRO issued within two days); <u>Bloom Protocol LLC v. Arone</u>, 6:21-cv-00756 (M.D. Fla. Apr. 30, 2021)(same); <u>3M Company v. Geftico, LLC</u>, 6:20-cv-00648, (M.D. Fla. Apr. 30, 2020)(Mendoza .J)(TRO issued within one day); <u>Interna. Speedway Corporation v. Suntrust Bank</u>, 6:19-cv-0154 (M.D. Fla. Oct,2019)(Mendoza .J)(Inj. denied same day), <u>Federal Trade Commission et al v. Worldwide Info Services, Inc. et al</u>, 6:14-cv-00008 (M.D. Fla. Jan. 9 2015)(same).

While not exhaustive as compared to Judge Mendoza's twenty-two (22) page, *sua sponte* condemnation of free speech against discrimination or racism voiced by Black Florida attorney, Roderick Ford in <u>Rembert v. Dunmar Estates</u>, *Ibid*, the Petitioner does not have the time or resources to compile a full list of cases where Judge Mendoza treated White litigants are differently than Black litigants.

Nonetheless, Judge Mendoza's *sua sponte* dismissal of Black cases that raise discrimination matters, are penalized for such acts, which raise discriminatory concerns in Petitioner's cases. For example, Judge Mendoza's selective enforcement of this court's Local Rule, "immediately" against Blacks, does not comport with any prior Orders, decisions or judgments in other cases. In <u>Leyva v. Wal-Mart Store E., LP</u>, 2:21-cv-754-SPC-NPM (M.D. Fla. Jan. 24, 2022), the Middle District court, prior to dismissal or sanctions, and after repeated failure, first ordered White plaintiff to comply with L.R.3.03.[3] The plaintiff later did so at entry #21. Here lies from a litany of cases, a stark contrast between the treatment of Black, versus Whites cases.

---

[3] "With the first appearance, each party must file a disclosure statement. . ." L.R. 3.03(a).

In the above case — the same set of facts, with respect to merely overlooking local filing deadlines, are present in the <u>Rembert v. Dunmar Estates</u> case, where Black attorney Ford missed the filing deadline by a mere thirty (30) days. However in the <u>Wal-Mart Store</u> case, the plaintiff missed the deadline for filing its disclosure statement by more than two (2) months — first following a reminder by the court — and an "Order Directing Compliance".

However, the <u>Rembert v. Dunmar Estates</u> case plainly shows the opposite. According to the record, Black Florida attorney Ford's case was dismissed at entry #5, and is the only case found to have been dismissed especially early, and without any warning for the mere failure to file a disclosure statement. And when the case had been dismissed and affirmed by the 11th Circuit, Judge Mendoza *sua sponte* issued a Show Cause Order against Black attorney Ford, on other grounds, to Show Cause as to attorney Roderick Ford as to why sanctions should not be imposed.

Judge Mendoza goes on to aver in lengthily detail, attorney Ford's history of invoking his First Amendment speech in opposition to bias and discriminatory court behavior — in fact, bore no real relevance to the case at bar, especially in a case that already ended. Judge Mendoza's early dismissal and threat of sanctions laced with attorney Ford's history of advocacy against bias or discrimination, was clearly predicated on the closely related fact that attorney Ford is Black/African American. There is no readily explainable, discernable or palpable reason as to why Judge Mendoza sought sanctions against Ford, which are largely based on Ford's speech. Judge Mendoza's attack on Ford is more personal in nature, irrespective of the fact

that the Order is polished with a judicial gloss, an exception to the Rule.

Too often has the American government made significant shifts against Black Americans in its policy of "free speech," largely reserved for Whites only, to work against Blacks if and when zealous African American people boldly express their concerns in order to defeat and rise above White supremacy's boundaries. Oft, such expressions are reformatted as radicalism in order to suppress Black consciousness, clearly seen in the case of <u>Rembert v. Dunmar Estates</u>. In Petitioner's case, Judge Mendoza simply closes the door in order to silence him. Apparently, with every new protest or even slight resistance to discrimination or racism, methods have been employed and developed in combination: from Judge Mendoza's act of sanctioning attorney Ford for speaking the truth, to implicitly staying Plaintiff's goal of securing social, political, cultural, and economic freedom for people of African descent.

Here, Judge Mendoza's character or behavior can be said, is strongly directed against Black, non-Hispanic African Americans. In the above cases, Judge Mendoza is clearly seen showing preferential treatment to both the powerful and influential White American class, and also the average White American. And in cases such as the one currently before him, Judge Mendoza shows equal bias in Petitioner's cases that have gone unanswered or undecided in upwards of more than one (1) year.

Arguendo, the Court in <u>Liteky et al. v. United States</u>, 510 U.S. 540 said in *dictum*, "it is better to speak of the existence of an 'extrajudicial source' factor, than of a doctrine, because the presence of such a source does not necessarily establish bias, and its absence does not necessarily preclude bias." While the mere fact that

*terrorism* does not alone establish bias against any specific class of persons, indeed, the fact that White Americans' associate terrorism with persons of Islamic belief is derived from extra-judicial sources that create in the mind of Whites Americans, an impregnable first and lasting impression. The same can be said with respect to the ongoing treatment of Black Americans, historically shown,[4] where extra-judicial sources encourage White Americans to treat Blacks/African Americans with the same disregard and disrespect, especially given that now Whites are being edged to believe that somehow "Slavery Wasn't All That Bad — and Some Dictators Weren't Either."[5]

Arguendo, according to recent studies, the "f-word" or "f-bomb" is said to be the most commonly known and used word by Americans. If Judge Mendoza was told to "*Go Fuck*" himself, clearly he learned the nature or the meaning of the word, not in court, but through extra-judicial sources, which might include friends, family, colleagues, acquaintances or daily media. Tardigrades, colloquially known as "water bears" or "moss piglets," are a phylum of eight-legged segmented micro-animals *unknown* to the average person. "[B]ecause [its] presence. . . does not necessarily establish" knowledge of its existence, does not mean it does not exist. Nonetheless, Tardigrades and the "f-word" obviously lie in two distinct categories. While racism

---

[4] "Florida's Public Schools Will Now Teach Students That Some Black People Benefited From Slavery," https://www.nbcnews.com/news/us-news/new-florida-standards-teach-black-people-benefited-slavery-taught-usef rcna95418#; Florida's State Academic Standards – Social Studies, 2023, *Clarification 1*: Instruction includes how slaves developed skills which, in some instances, could be applied for their personal benefit. SS.68.AA.2.3, https://www.fldoe.org/core/fileparse.php/20653/urlt/6-4.pdf

[5] https://news.yahoo.com/history-101-florida-slavery-wasnt-100236396.html

is often said is difficult to prove, absence of proof does not negate its existence.

Separately, and alternatively, another comparison may be made between this case and Petitioner's other case in <u>Baylor v. Unknown Officers et al</u>, 5:23-cv-00257-J (W.D. Okla. 2023), where the federal judge and the case docket reflect substantially different treatment. To date, Petitioner in the foreign case has been treated with fair enforcement of federal law, policy and procedures with neutrality, while Judge Mendoza's unabashedly disparate treatment of Black Petitioner, including attorney Ford in discrimination cases, undoubtedly violates any alleged guarantees to Due Process, Free Speech and Equal Protection under White American law.

The facts averred here would normally in White cases, create in a reasonably prudent person a well-grounded fear of not receiving a fair trial, hearing or decision before a biased judge, which is precisely the case in Black Petitioner's case(s).

## ARGUMENT

This Petition should not be misconstrued or perceived as an impermissible attack on Judge Mendoza's rulings or decisions in other cases. In fact, there are no rulings or decisions in Petitioner's cases to support such an argument. Rather, this Petition distinguishes the difference between Judge Mendoza's treatment and the handling of White cases compared to Black cases, notwithstanding White litigants compared to Black litigants.

To clarify, courts have found it satisfactory where a litigant "show[s] that the allegations of bias was personal in the sense that it was directed against. . . a member of a class. . . It was not an allegation of judicial bias in favor of a particular

legal principle. Neither was it an allegation of judicial bias based upon legal rulings. . ." United States v. Thompson, 3 Cir. 1973, 483 F.2d 527, cert. denied, 415 U.S. 911, 94 S .Ct. 1456, 39 L.Ed.2d 496 (1974). Petitioner "does not suggest that the personal bias of the judge arose from a prejudgment of the facts in the case before him. Rather, the alleged bias was directed against a class."*Id.*

"[T]he personal bias alleged was of such a nature and intensity to prevent the [Petitioner and Attorney Ford] from obtaining [relief] uninfluenced by the court's prejudgment concerning [Blacks] generally." *Id*.

The Court emphasized in other cases that litigants are not required to prove the dislike of Blacks; it is enough to show a reliance on unsupported stereotypes about Blacks — e.g. *See* Ferrill v. The Parker Group, Inc., 168 F.3d 468, 473 n. 7 (11th Cir. 1999)(observing that "ill will, enmity, or hostility are not prerequisites of intentional discrimination"). Therefore the absence of any overt evidence that Judge Mendoza engaged in patently racist acts, such as the use of racial slurs, should not be dispositive. Parenthetically, "discriminatory intent may be found even where the record contains no direct evidence of bad faith, ill will, or any evil motive on the part of public officials." 16B Am. Jur. 2d Constitutional Law § 837.

> "[D]isqualifying judges for outward manifestations of what could reasonably be construed as bias obviates making subjective judgment calls about what is actually going on inside a judge's heart and mind."[6]

"On the other hand, there could be a case where the cause of the controversy with the lawyer would demonstrate bias of such a nature as to amount to a bias

---

[6]Judicial Disqualification: An Analysis of Federal Law, 17-18, Federal Judicial Center (2d ed. 2010).

against a group of which the party was a member — e.g., all Negroes. . . This then would be bias of a continuing and 'personal' nature over and above mere bias against a lawyer because of his conduct." <u>Davis v. Board of School Commissioners</u>, 5 Cir. 1975, 517 F.2d 1044, 1051, cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

While Judge Mendoza's frustration with attorney Ford may be masked as stemming from judicial sources, does not warrant critical, disapproving or hostile remarks with respect to attorney Ford's First Amendment activity in other cases not before the court. It is axiomatic that a court may not judicially notice facts or material in other cases for the truth of the matters asserted against Ford.

On the third hand, Judge Mendoza's patented inaction in Petitioner's case is akin to action taken in Ford's discrimination case. But due to the reason Petitioner raises exceptional, unusual, special and unique claims against White State court judges, Judge Mendoza continues to aid them by delaying Petitioner's case(s), in upwards of one (1) year in order to render his claims moot. It is the kind of act, or inaction that "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible." <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

> "Factors probative of whether a [judge] was motivated by discriminatory intent include (1) evidence of a consistent pattern of actions by a [judge] disparately impacting members of a particular class of persons; (2) the historical background of the decision, which may take into account any history of discrimination by the [judge]; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by the [judge] on the record or in minutes of their meetings."

16B Am. Jur. 2d Constitutional Law § 837.

Implicit bias is described as: . . . attitudes or stereotypes that affect our understanding, decision-making, and behavior, without our even realizing it.[7] Studies have shown that judges harbor the same kinds of implicit biases as others, and that these biases can affect their judgment and treatment of litigants.[8]

As a result, some of the Petitioner's cases before the State of Florida's circuit and Supreme court have been dismissed without Due Process or Equal Protection by law, rights allegedly protected by federal courts.

While other issues remain, the fact that Respondents have failed, refused and denied Petitioner relief mandated under both State and federal laws, which require Notice and impartial judge in all cases, Petitioner has been substantially prejudiced and irreparably harmed by Judge Mendoza's refusal to decide any of Petitioner's cases or claims, which include the opportunity to defend, speak, be heard, access the court or proceed any further by seeking certiorari review under federal law, 28 U.S. Code § 1257(a).[9] Absent a final decision from the State appellate court, Petitioner is

---

[7] Jerry Kang, et al., Implicit Bias in the Courtroom, 59 UCLA L. REV. 1124, 1126 (2012).

[8] Jeffrety J. Rachlinski et. al., Does Unconscious Racial Bias Affect Trial Judges?, 84 NOTRE DAME L. REV. 1195, 1205-08 (2009).

[9] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States." 28 U.S. Code § 1257(a).

unable to seek review before the State's Supreme Court[10], to ultimately petition the U.S. government for review before the United States Supreme Court.

While not conclusive on any of Petitioner's claims by any means, is but one of the many ways in which Petitioner suffers from irreparable harm. On par with the Respondents, Judge Mendoza has implicitly said through his actions or lack thereof, Blacks have no such rights Florida courts are bound to recognize anywhere in the State of Florida. Especially when Black Petitioner is denied of one of the most basic tenets under the Constitution(s), alleged to be Due Process of Notice, *inter alia*, a fair and impartial judge.

Here, Judge Mendoza has engaged in a pattern and practice of behavior which is discriminatory in nature, and lead by deep-seated favoritism for White litigants — but hostility towards specific members, class or group of non-Hispanic Black/African American advocates who direct their opposition to American social norms such as bias or racism in the courts. The record and facts in each case plainly demonstrate that Judge Mendoza impermissibly discriminates against non-Whites, whether an attorney or private litigant, and that the level is disproportional, and disparately impacts one class of persons.

### PRAYER FOR RELIEF

Based on the aforementioned facts and authorities set forth herein and in the attached Declaration, Petitioner respectfully prays that the Honorable Chief Judge Timothy J. Corrigan enter an Order to disqualify Judge Mendoza under 28 U.S.C. §

---

[10] "The petitioner's brief, with the argument section limited solely to the issue of the supreme court's jurisdiction, and accompanied by an appendix **containing only a conformed copy of the decision of the district court of appeal**." Fla. R. App. P. 9.120(d).

144 or 28 U.S.C. § 455(a).

Respectfully Submitted.

Christopher Gary Baylor
AAFA Advocate

September 25, 2023           3206 South Hopkins Ave, 43
Titusville, FL 32780
Telephone: (484) 682-2605
cbaylor@aafa-law.org

## CERTIFICATE OF GOOD FAITH

Pursuant to 28 U.S.C. § 144, the undersigned certifies that the Petitioner's

Verified Petition to Disqualify is made in good faith.

/s/Christopher Gary Baylor
Christopher Gary Baylor

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 25, 2023, I filed the foregoing document

and served Respondents via this Court's CM/ECF system.

/s/Christopher Gary Baylor
Christopher Gary Baylor

15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

Christopher Gary Baylor,

               Petitioner,

vs.                                       6:23-cv-748-CEM-EJK

THE FLORIDA KU KLUX CLAN
FOR THE TRADITIONALIST
AMERICANS, ET AL.,

               Respondents.

**DECLARATION OF CHRISTOPHER GARY BAYLOR**

I, Christopher Gary Baylor, make this declaration in support of my Petition to Disqualify.

1. I am a homeless indigent, non-Hispanic, Native African American military veteran. I have been homeless since May 2021.

2. I am the Plaintiff in this case and have personal knowledge of the facts stated in my case, Complaint and other papers subsumed therein.

3. My case is a Public Interest Litigation action for the determination of fair housing rights for indigent Floridians.

4. I am the Plaintiff in case 6:22-cv-01356-CEM and have personal knowledge of the facts stated in my case, Complaint and other papers subsumed therein.

5. I am the Plaintiff in case 5:23-cv-00257-J and have personal knowledge of the

1

facts stated in my case, Complaint and other papers subsumed therein.

6.   I am not a party to case 6:22-cv-544-CEM, but have personal knowledge of the facts stated in that case.

7.   I filed this case on April 24, 2023, and all parties have been properly served.

8.   I commenced this action against White State court justices, judges and court clerks in and for the Eighteenth Judicial Circuit, Fifth and Second District Court of Appeals and Supreme Court in the State of Florida.

9.   I commenced this case for injunctive and declaratory relief to determine what relief, if any, might be available for the repeated deprivation of my right to Notice, copies of final decisions, notices and other papers in appellate proceedings, and fair and impartial judges in my State court cases.

10.   The Respondents have intentionally refused to provide me with any equitable or lawful relief since I filed Motions to Disqualify appellate judges on December 2021.

11.   The Respondents have refused to provide me with any equitable or lawful relief in any State court proceeding.

12.   The Respondents have refused to provide me with any equitable or lawful relief through formal letter allowed by the Florida Statute.

13.   I have filed responses to Respondents consecutive Motions filed in this case, simply as a matter of course and to defend.

14.   I have **not** filed any papers or documents in this case to cause delay, harass or increase the cost of litigation.

15.  I have **not** filed any papers in this case seeking disqualification or recusal of Judge Carlos Eduardo Mendoza or any other judge.

16.  I have **not** filed any papers in any of the aforementioned cases seeking the same.

17.  Judge Mendoza's bias became unquestionably apparent on September 21, 2023, subsequent to filing my Motion for Emergency Injunctive Relief, ECF.No.:47, on September 20, 2023.

18.  My Motion for Emergency Relief asks for the same relief the White female litigant sought in Mendoza's case, in Cuthbertson v. Comm'r of Soc. Sec., 6:15-cv-2062 (M.D. Fla. Mar. 29, 2017).

19.  The White female litigant in the case above did not properly establish her claim for such relief, yet Judge Mendoza, as a matter of justice or *ex gratia*, granted her the relief.

20.  I have clearly stated in my Motion for Injunctive Relief, with precision, based on relevant applicable law and facts, under alternate legal theories, the same relief that was granted to the White litigant in the case above.

21.  Compared to other cases brought by White litigants seeking emergency relief in the Middle District Court of Florida, especially in Judge Mendoza's cases, my Motion for Emergency Relief has not been decided by Judge Mendoza as expected.

22.  Due to Judge Mendoza's refusal to decide my Motion for Emergency Relief, my State court case, explained in ECF.No.:47, was dismissed on September 22, 2023 in complete derogation of Florida State law.

3

23. I have 15-days from the final Order to seek reconsideration.

24. I know it to be fruitless to seek reconsideration in a biased State court forum that refuses to provide me with any lawful or equitable remedy or relief.

25. The docket in this case does not indicate that Judge Mendoza has taken any of my papers under advisement.

26. Based on Judge Mendoza's refusal to hear my case or claims, Judge Mendoza will not provide me with a fair hearing, trial, decision, ruling, Order or Judgment.

27. Based on Judge Mendoza's delay or implicit stay of the claims in my case, it is for the purpose of rendering my claims moot in order to dismiss my case or claims on procedural grounds.

28. I have personal knowledge of court tactics, due to my service in the military, knowledge of the Uniform Code of Military Justice and familiarity with military proceedings.

29. I have personal knowledge of court tactics, due to my participation in civilian proceedings, knowledge and experienced acquired from erroneous denials, for the mere vindication of employment, housing, familial and marital rights.

30. I have knowledge and experience that exceeds the average *pro se* litigant, and have won undocumented cases as a "ghost writer," in more than 300 cases.

31. I know that my cases and claims are not frivolous or without merit.

32. I know that I am not successful in my cases due to my race, because I have personally guaranteed and witnessed success in non-Black cases that are not my own.

33. Because I am naturally disadvantaged because of my race, I genuinely fear that if Judge Mendoza is not disqualified, or he does not recuse himself, he will continue to preside over my case to summarily dispose of my case, in retaliation, without making any findings of facts or conclusions of law, simply to terminate my case on procedural grounds, or under color of law.

34. The public will be substantially harmed by the colorful dismissal of my case, since the claims in my case raises matters of public importance, which will affect all Floridians, not just Blacks/African Americans.

35. I filed companion case 6:22-cv-01356 on August 1, 2022, and all parties have been properly served.

36. Judge Mendoza issued a Show Cause Order in case 6:22-cv-01356 on August 9, 2022, and my Response, ECF.No.:11, was filed on August 22, 2023.

37. Judge Mendoza has not decided his own Show Cause Order, ECF.No.:9, or my Response, entered in case 6:22-cv-01356 more than 1 year, to date.

38. I filed a Motion for Injunctive Relief, ECF.No.:19, on January 11, 2023, and a Motion for Hearing and Clarification, ECF.No.:22, on March 13, 2023, in case 6:22-cv-01356.

39. Judge Mendoza has not decided the pending Motions in case 6:22-cv-01356 for more than 8 months.

40. I fear that Judge Mendoza will treat my case like 6:22-cv-544-CEM, Rembert v. Dunmar Estates, (M.D. Fla. Jul. 24, 2023), but will intentionally delay my case in order to dismiss on procedural grounds, for "failure to prosecute," or some other

clearly erroneous reason under color of law.

41.  There is no other way to compel **any** Judge to act according to Constitutional law, other than by removal, through disqualification.

42.  I filed unrelated case 5:23-cv-00257-J on March 21, 2023, and all parties have been properly served.

43.  I similarly filed the above case for declaratory and injunctive relief, and did not seek monetary or punitive damages, because I am not a vindictive, malicious, serial, frivolous or vexatious litigant.

44.  The case above was filed for a determination and protection of rights.

45.  The federal Judge in case 5:23-cv-00257-J, in the State of Oklahoma, has without question or unnecessary nudging, acted with absolute impartiality, so far, and has decided the papers filed by both parties in an exceptional, fair and timely manner, without any show of bias, delay or unreasonableness.

46.  The party in case 5:23-cv-00257-J, unlike in this case, was Ordered to file its Answer.

47.  The federal Judge in case 5:23-cv-00257-J did not find my Complaint, claims or issues without merit or frivolous.

48.  I hope for a swift determination of rights in that case, and do not intend to prolong the matter longer than what is generally necessary.

49.  I have not commenced any litigation out of enjoyment, excitement, curiosity, anger, hostility towards government or any known race or group of persons, or any other fathomable reason, except for seeking fair adjudication of my rights that have

been eviscerated without Due Process of law.

50. I would rather be living a "normal" life, with a family, instead of continuing endless and needless litigation with biased and racist Florida judges.

51. I have not been treated with the same fairness in the Florida courts, seen in the Oklahoma Court.

52. Judge Mendoza, Judge Roy B. Dalton Jr., Judge Paul G. Byron, and Florida State court judges, have acted with pervasive and extra-judicial bias against me for speaking out and taking immediate action against discrimination or racism.

53. Judge Mendoza's bias and discrimination against Black/African Americans, is more clearly reflected in his 22-page Order threatening to sanction Black attorney, Roderick Ford, for advocating against discrimination and/or racism in other cases in the State of Florida, that were not currently before Judge Mendoza nor had any relation or bearing on the case at bar, and that already ended.

54. The time, length and detail Judge Mendoza spent making personal attacks against Black attorney Ford, could have been better spent adjudicating claims, or more pertinent issues in other cases.

55. Judge Mendoza's discriminatory attacks against attorney Ford was not mere case mismanagement, or by mistake, but was designed and deliberate.

56. Based on observing Judge Mendoza's behavior and treatment of my case, and attorney Ford's case, including the early dismissal of Ford's case at docket entry #5 without warning, or opportunity to explain or correct his mistake, in comparison to a dearth of White cases presided over by Judge Mendoza, I fear that Judge Mendoza

will treat me with the same disregard, disrespect and discrimination because of my race, which is clearly evinced on the record(s).

57. While Judge Mendoza's attacks are yet to be aimed personally against me, I fear that Judge Mendoza's *ad hominem* references, with respect to Mr. Ford, reveal a much deeper rooted evil animus towards Black embedded over time through extra-judicial sources, which demonize members or groups of a certain class who have historically advocated against bias or discrimination in the court, including myself , Mr. Ford and other Black/African Americans.

58. Judge Mendoza has referred to Black attorney Ford's advocacy and First Amendment speech as:

a)  [a] vitriolic attack;

b)  particularly egregious;

c)  diatribes against the. . Judge;

d)  launched. . attack;

e)  more odious with each filing;

f)  concerning. . behavior;

g)  antics;

h)  tactic[s];

i)  acerbic attack;

j)  egregious behavior;

k)  bad faith;

l)  reckless disregard as to. . truth or falsity;

m) the Court is convinced that something must be done to curtail such abuses.

59.  I am afraid, and do not feel comfortable interacting in this case with such a biased judge, Judge Mendoza, who would in a similar fashion resort to threatening me in order to further stymie my right to speak freely, and would resort to dirtying or distorting the face of the record with pejoratives directed against me, which are unnecessary and inappropriate methods to exploit the influence of the court to undermine the objective here.

60.  Litigants in adversary proceedings resort to such attacks, but Judge Mendoza should refrain from demonstrating such a level of impropriety to uphold the mere appearance of justice. He has not.

61.  I have not found any cases where Judge Mendoza has granted relief in any Civil Rights case.

62.  Judge Mendoza's behavior or conduct is beyond mere reprimand, and is more in the realm of Black vilification, which is more personal in nature no matter the amount of judicial gloss on his Order.

63.  Judge Mendoza's bias is also pervasive, given that it precisely mirrors the *operandi modus* of the Respondents in the State court, whom interests he seeks to protect. The two are identical and clearly share the same beliefs.

64.  Based on the aforementioned, I fear that I will not have any opportunity to a fair hearing, trial, ruling, decision, Order or Judgment if Judge Mendoza is allowed to continue to preside over my cases.

**Affiant Further Saith Not**


    I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746 THAT THE FOREGOING IS TRUE AND CORRECT


Executed on this 25th day of September 2023

_Christopher Gary Baylor_
Christopher Gary Baylor